IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RANDOLPH RAY SAENZ PLAINTIFF

v. Civil No. 10-5172

SHERIFF TIM HELDER; JAIL ADMINISTRATOR RANDALL DENZER; DR. HOWARD; NURSE RHONDA BRADLEY; NURSE ZENOBIA DAVISON; NURSE RHONDA BRADLEY; and NURSE RHONDA MESCHEDE DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff under the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Arkansas Department of Correction (ADC), Ouachita River Unit, in Malvern, Arkansas. The claims at issue in this case arose when Plaintiff was incarcerated in the Washington County Detention Center (WCDC), in Fayetteville, Arkansas.

Plaintiff maintains that he was denied adequate medical care. Specifically, Plaintiff asserts he was: (1) not allowed to have his leg braces and medically approved shoes; (2) he was refused housing in the medical pod; and (3) although he was given a prescription for Elavil®[1] by Dr. Howard, he went without the drug for the remainder of his stay at the WCDC.

---

[1] Elavil® is the brand name for Amitriptyline. A drug used primarily to treat the symptoms of depresssion.



AO72A
(Rev. 8/82)

**1. Background**

Plaintiff was booked into the WCDC on February 15, 2010. *Plaintiff's Response* (Doc. 74) (hereinafter *Resp*.) at ¶ 1. He remained there until his transfer to the ADC on October 8, 2010. *Id.* at ¶ 2.

Prior to his incarceration, Plaintiff had injured both of his heels. *Resp.* at ¶¶ 1. As a result of the injury, he wore braces on his legs, used a cane, and wore special shoes. *Id.* at ¶ ¶1 & 4. When he was arrested, Plaintiff states he was not given time to put his braces and shoes on. *Id.* While being booked in, the officer told Plaintiff that since he did not have a medical device with him that he could not be housed in the medical pod. *Id.* at ¶ 4. During the booking process, Plaintiff asked if he could have his braces, shoes, and cane brought to the jail. *Id.* at ¶ 6. He was told he would have to work out this issue with his doctors, Dr. Jason Pleimann and Dr. R. Bryan Benafield, of the Ozark Orthopedic Foot Clinic (hereinafter Foot Clinic), and the detention center doctor. *Id.* at ¶¶ 5-7.

Plaintiff asked on multiple occasions to be housed in the medical pod. *Resp.* at ¶ 8. When he was seen by the doctor, Plaintiff was told the doctor would get back to him after he found out something from the Foot Clinic. *Id.* at ¶ 8. Plaintiff states the Foot Clinic would have verified his need for leg braces and a well padded pair of tennis shoes. *Id.* at ¶ 10(b).

Between February 16, 2010, and October 3, 2010, Plaintiff submitted thirty-one medical requests for a variety of reasons including asking for: a medical shave due to an ingrown hair; sinus medication; lotion for his feet; pain medication for aches and pains; and special diet food trays. *Resp.* at ¶ 9. His requests were responded to by the nurses within a day or two and he was approved for the items and medication he requested. *Id.* at ¶ 9(a). However, Plaintiff states he



AO72A
(Rev. 8/82)

could not get the medical staff to prescribe anything stronger than Aleve for his pain "due to arthritus heel & leg cramps due to nerve damage plus having to walk constantly or just sit in the lockout." *Id.* at ¶ 9(b).

On March 5, 2010, Plaintiff completed a medical request on which he wrote: "I've got 1 rod and 2 pins and screws too inside of each of my heel and it give me back pain to walk on concrete plus artritus in my lower knees could you please get some type of lotion mix with vasoline medicated for my feet." *Amended Complaint* (Doc. 39) at Exhibit C at pg. 18. While the lotion helped a little with the pain, he states that Nurse Meschede kept informing him that the medical pod was overcrowded so there was no need for him to keep trying to get moved there. *Resp.* at ¶ 10(a). He also asked if the doctor had checked with the Foot Clinic. *Id.* In fact, Plaintiff states he asked every nurse to see if the doctor had checked with the Foot Clinic. *Id.* at ¶ 10(b).

Plaintiff states he has Hepatitis C and there are only certain medications he can take. *Resp.* at ¶ 11. Although the Aleve gave him stomach aches and did not relieve his pain, Plaintiff was told by the nurses that it was all the jail would provide. *Id.*

On March 22nd, Plaintiff was seen by Dr. Howard regarding pain in his feet and shoulders. *Id.* at ¶ 12. Dr. Howard is the jail physician for the WCDC. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1 at ¶ 1. According to Plaintiff, he told the doctor how he had broken both of his heels, had surgery on them, and the names of the doctors he saw at the Foot Clinic. *Resp.* at ¶ 12. He also told the doctor that he had a whiplash in his neck. *Id.*

When Plaintiff told Dr. Howard that he was allergic to over-the-counter Tylenol and Ibuprofen, Dr. Howard states it gave him pause and led him to believe Plaintiff was potentially



AO72A
(Rev. 8/82)

drug seeking. *Defts' Ex.* 1 at ¶ 2. In Dr. Howard's experience not many people are allergic to Tylenol and Ibuprofen. *Id.*

Dr. Howard prescribed Elavil, as a courtesy; but informed the Plaintiff that his family would have to pay for the medication because he felt it was not medically necessary for Plaintiff's complaints. *Defts' Ex.* I at ¶ 4. Dr. Howard believed it was a convenience drug to help an inmate relax in jail and make them feel better. *Id.* Dr. Howard states he has frequently prescribed the drug for sleep disorders. *Id.*

Dr. Howard states he was never made aware of the fact that Plaintiff did not have anyone to pay for the prescription. *Defts' Ex.* 1 at ¶ 5. Had he known that Dr. Howard states he would not have prescribed the medication. *Id.* After March 22nd, Dr. Howard states he did not receive any medical requests from the Plaintiff requesting Elavil. *Id.* at ¶ 6. Further, Dr. Howard states Plaintiff never requested specialized shoes and did not make him aware of any such request during the March 22nd visit. *Id.* at ¶ 7.

On a September 13th request form, Plaintiff noted he had no one who could pay for the prescription. *Resp.* at pg. 19. Plaintiff asked whether ADC would pay for the medication. Nurse Bradley indicated she would send his request for Elavil to the ADC. *Resp.* at ¶ 16(a); pg. 19.

Because he was not provided with the Elavil, Plaintiff maintains his pain was worse, he was having leg and calve cramps, andt he was very unbalanced. *Resp.* at ¶ 18. The day before his transfer to the ADC, Plaintiff submitted a grievance about not being provided with prescribed medication and medical shoes, and not being housed in the medical pod. Plaintiff feels the Defendants exhibited deliberate indifference to his serious medical needs in part by failing to check with the Foot Clinic about his need for braces and medical shoes. *Resp.* at ¶ 21.

When asked how Major Denzer and Sheriff Helder were liable, Plaintiff responded that he was moved from an open barracks to a lock out pod, not the medical pod because it was over crowded. *Resp.* at ¶ 21. Plaintiff believes the Sheriff Helder directed Major Denzer to make the move. *Id.*

Plaintiff asserts that he was assigned to the second floor of the pod which required him to climb stairs. *Resp.* at pg. 45. He indicates this caused even more stress and pain to his ankles, heels, and calves. *Id.*

When asked whether he contended that Washington County had a custom, policy, or practice that resulted in his being deprived of his constitutional rights. Plaintiff replied: "The Dr. could have helped provide for me to get heavier medicine other than aleave and let me have gotten my braces for both right & left feet plus my shoes & cane." *Resp.* at ¶ 22. With respect to the Elavil, Plaintiff states he was supposed to "have been taken care of regardless if I couldn't pay for the expense."

Plaintiff points to various passages in the Procedure Manual for the WCDC. First, he refers to section 8.03 devoted to non-emergency care and daily medical complaints. Under the caption procedure, Plaintiff notes the passage regarding doctor orders provides that "[a]ny order(s) given by the Facility Physician for a detainee shall be attached to the detainee's file with an accompanying notation made on the log. The nurse shall be responsible for checking the log and following all physicians' orders noted." *Resp.* at pg. 27. Next, Plaintiff refers to section 8.04 dealing with medications and pharmaceuticals. Specially, he refers to section 8.04 about setting up medications which provides as follows:



AO72A
(Rev. 8/82)

> Medications shall be set up by the nurse or detention officer in accordance with the orders of the Facility Physician. The nurse or officer shall: (a) review the composite list of detainees receiving medication and the complete health screening forms of detainees admitted on the previous shift who might have a prescription at admission. All detainees currently taking medication have log sheets in the active medication file; (b) Make certain that if a detainee was admitted with medication on his person, the prescription has been verified and approved by the nurse before it is administered.

*Resp.* at pg. 28.

Next, Plaintiff points to the area of the policy, section 9.00, entitled "No Pain and Inalienable Rights." *Resp.* at pg. 29. This policy provides that "[a] detainee is entitled to necessary and timely medical, dental, and mental health care." *Id.*

Next, Plaintiff refers to the section that provides that "[f]acitilies mush be adequate for the number and type of detainees being housed." *Resp.* at pg. 30. Finally, he refers the Court to the policy regarding the infliction of pain and removal of rights. It provides:

> The infliction of pain and the removal or restriction of rights must comply with the fourteenth amendment requirements of equal protection and due process. (a) **Equal Protection:** The equal protection clause of the fourteenth amendment requires that people similarly situated be similarly treated. Any rights or privileges afforded detainees by a detention facility must be made equally available to all persons similarly situated. Any inequality in the treatment of detainees must be rationally related to the legitimate[2]

Plaintiff has furnished exhibits that verify that he had fractured his left and right heels and had surgery with hardware installed. *Resp.* at pgs. 36-41. He also submitted an ADC record indicating that as early as August of 2004 he was medically restricted from any "assignments requiring prolonged crawling, stooping, running, jumping, walking or standing" and was to be given "Bottom floor bottom bunk housing." *Id.* a pgs. 51-52. He also submits an ADC

[2] The remainder of the provision has not been provided to the Court..

document stating he had orthopaedic appliances, arch supports and heel cuffs. *Id.* at pg. 42. This authorization covered the time frame of 8/3/2009 to 11/01/2009. *Id.* He has also submitted an exhibit dated October 19, 2010, during which he was prescribed Naproxen, 500 mg., twice a day and rantidine for gastroesophageal reflux disease (GERD). *Id.* at pg. 54. He was also given restrictions to avoid prolonged crawling, stooping, running, jumping, walking, or standing and to avoid strenuous physical activity. *Id.*

Plaintiff next submits a witness statement from Shawn Wood. *Resp.* at pg. 43. Wood indicates he witnessed Plaintiff talking to various staff members including the nurses and Major Denzer for help in getting his medication filled and having his braces and shoes brought to the jail. *Id.*

Plaintiff also provides the Court with a document appearing to be one page of an ADC record which indicates that on July 31, 2012, he was authorized to use a cane, brace, prescribed footwear, and an orthopedic appliance. *Resp.* at pg. 50.

**2. Applicable Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).



AO72A
(Rev. 8/82)

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

**3. Discussion**

**(A). Failure to Exhaust Administrative Remedies**

The Defendants maintain that Plaintiff's claim regarding his need for specialized foot care must be dismissed because Plaintiff did not exhaust his available administrative remedies as required by the Prison Litigation Reform Act (PLRA) prior to filing this lawsuit. I will address this issue first as a finding in favor of Defendants on the exhaustion issue is fatal to Plaintiff's claims regarding the medical devices.

As amended by the PLRA, 42 U.S.C. § 1997e(a) mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The Supreme Court has held that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 534 (2002). In *Booth v. Churner*, 532 U.S. 731, 738-39 (2001), the Court held that "exhaustion is required where



AO72A
(Rev. 8/82)

administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought." *Walker v. Maschner*, 270 F.3d 573, 577 (8th Cir. 2001). Specifically, it has been held that a grievance procedure contained in a handbook constitutes an available administrative remedy within the meaning of § 1997e(a). Id. "If an inmate fails to exhaust one or more discrete claims raised in a § 1983 complaint, the PLRA requires only that the unexhausted claim or claims be dismissed–it does not require that the complaint be dismissed it its entirety."

In this case, Plaintiff has sworn under penalty of perjury that he submitted a grievance about his not being provided with prescribed medication, braces and medical shoes, and not being housed in a medical cell. *Resp.* at ¶ 19. Defendants have provided no affidavits or other evidence establishing that Plaintiff failed to file a grievance on these issues.

**(B). Physical Injury Requirement**

Defendants contend Plaintiff can recover no damages because he suffered no physical injury. The PLRA provides, in pertinent part, that "[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury ... without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2011), The Eighth Circuit concluded that Congress intended this provision to "limit[ ] recovery for mental or emotional injury in all federal actions brought by prisoners."

Plaintiff states he suffered heel pain, back pain, leg cramps, and that his arthritis has gotten worse. *Resp.* at ¶ 18. This is sufficient to satisfy the physical injury provision of the PLRA.

**(C). Denial of Adequate Medical Care**

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher*, 465



AO72A
(Rev. 8/82)

F.3d 340, 344 (8th Cir. 2006). To prevail on an Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even that gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

In this case, Defendants have supported their motion with one document--the affidavit of Dr. Howard. As noted above, Dr. Howard denies having been made aware of Plaintiff's request for specialized shoes. Dr. Howard does not address whether Plaintiff ever asked for braces or a cane.

Dr. Howard saw Plaintiff a single time on March 22nd and there is no indication that he attempted to obtain Plaintiff's medical records. In fact, although the doctor states Plaintiff presented with complaints of pain in his feet and left shoulder, no mention is made of any discussion of why Plaintiff was having pain in these areas.



AO72A
(Rev. 8/82)

In contrast, Plaintiff maintains he told Dr. Howard all about his past medical history and his need for braces, specialized shoes, and a cane. Plaintiff states he also gave Dr. Howard the names of the surgeons involved and the clinic they practiced at. According to Plaintiff, he was told by Dr. Howard that he would "get back" to the Plaintiff when he obtained the information from the clinic.

Clearly, the statements from the Plaintiff and Dr. Howard over what was discussed on March 22nd are diametrically opposed. With respect to the remaining Defendants, the Court was not supplied with any information about their contact with the Plaintiff and whether they were aware of his request for braces, special shoes, or a cane. According to Plaintiff, he asked every nurse to see whether the Doctor had checked with the Foot Clinic. Additionally, while he did not mention his need for the braces and special shoes in his subsequent medical requests, he did continue to mention pain in his feet. I believe genuine issues of fact exist.

Similarly, with respect to the Elavil, I believe there are genuine issues of fact. According to Dr. Howard, he prescribed a "medically unnecessary" drug to the Plaintiff with the understanding that Plaintiff's family would pay for the drug. In subsequent medical requests Plaintiff notified the medical staff that he had no family to pay for the drug and requested that it either be supplied or it be determined if the ADC would pay for the drug. Plaintiff additionally complained that the over-the-counter Aleve he had been getting was not strong enough.

However, Plaintiff has failed to state a claim as far as Sheriff Helder and Jail Administrator Randall Denzer are concerned. Plaintiff contends they made the decision to have him moved from an open barracks to a lock out pod. *Resp.* at ¶ 21. He does not contend they had anything to do with the provision of medical care to him.

Sheriff Helder and Major Denzer are not liable under § 1983 merely because they employ the alleged wrongdoers. There is no vicarious liability under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). They can be individually held liable "only if [they] 'directly participated in the constitutional violation, or if their failure to train or supervise the offending actor caused the deprivation.'" *Audio Odyssey, Ltd. v. Brenton First Nat'l. Bank*, 245 F.3d 721, 742 (8th Cir. 2001)(*quoting Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997)). No such showing has been made here.

While a claim against Sheriff Helder and Major Denzer in their official capacity is the equivalent of a claim against Washington County, *see Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 905 (8th Cir. 1999), "a local government may not be sued under § 1983 for injury inflicted solely by its employees or agents." *Bechtel v. City of Belton, Missouri*, 250 F.3d 1157, 1160 (8th Cir. 2001). Instead, Sheriff Helder and Major Denzer can be held liable in their official capacities only if there is evidence of a custom or policy of Washington County that was the moving force behind the constitutional violation at issue. *See Bechtel*, 250 F.3d at 1160; *Audio Odyssey, Ltd. v. Brenton First Nat'l. Bank*, 245 F.3d 721, 741-42 (8th Cir. 2001); *Lane v. Sarpy County*, 165 F.3d 623, 624 (8th Cir. 1999). Even if Washington County "can be faulted for not putting in place more precise procedures," there is no evidence here of a custom or policy of failing to obtain needed medical records or obtain medication deemed unnecessary by the prescribing doctor.. *Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir. 2001). *See also Howard v. Calhoun County*, 148 F. Supp. 2d 883 (W.D. Mich. 2001)(Claim of personal representative of the estate of an inmate who died of a heart attack failed to prove deliberate indifference by the county and its sheriff despite claim that they failed to implement an adequate

medical emergency policy and appropriately train officers where there was no evidence of previous mishandled medical emergencies and no evidence they had notice of a plainly obvious need to implement an improved policy or improved training). Accordingly, the official capacity claims against Sheriff Helder and Major Denzer also fail as a matter of law.

**(D). Equal Protection Claim**

Plaintiff also appears to be asserting an Equal Protection claim. The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). An Equal Protection claim is stated when a fundamental right has been infringed or a state actor intentionally discriminates against the plaintiff because of membership in a protected class. *See e.g., Purisch v. Tennessee Technological University*, 76 F.3d 1414, 1424 (6th Cir. 1996). Plaintiff does not contend that inmates of other races were treated differently in respect to their medical care. There is no allegation that the policy and procedures utilized were in some way disproportionately applied to different races. Plaintiff makes no claim that similarly situated prisoners were treated differently. No plausible Equal Protection claim is stated.

**(E). Qualified Immunity**

While there is a section in Defendants' brief (Doc. 64 at pg. 13) entitled qualified immunity, the discussion is about whether Plaintiff has shown the existence of a policy or custom of Washington County. For this reason, this topic will not be addressed.

**4. Conclusion**

For the reasons stated, I recommend that Defendants' motion for summary judgment be granted in part and denied in part. Specially, the motion should be granted with respect to all

Equal Protection Claims and all claims against Sheriff Helder and Major Denzer. In all other respects, the motion should be denied.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of January 2013.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE



AO72A
(Rev. 8/82)